BOARD OF COMMISSIONERS OF THE CITY OF HOBOKEN (MAYOR AND COUNCIL OF THE CITY OF HOBOKEN) A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PROSECUTOR, v. THE STATE BOARD OF TAXES AND ASSESSMENTS AND HOBOKEN BANK FOR SAVINGS, RESPONDENTS.

Argued January 21, 1930—Decided August 2, 1930.

Before Justices TRENCHARD, LLOYD and CASE.

For the prosecutor, *William A. Kavanagh.*

For the respondent State Board of Taxes and Assessments, *William A. Stevens,* attorney-general.

For the respondent Hoboken Bank for Savings, *Pierson, Schroeder & Brand.*

The opinion of the court was delivered by

LLOYD, J.   The *certiorari* in this case is to review the action of the state board of taxes in reducing an assessment made by the board of assessors of the city of Hoboken against the Hoboken Bank for Savings in that city on personal property owned by the bank.   The city assessors had made an assessment on $300,000 as moneys on hand October 1st, 1927.   The state board reduced this to $191,264, the amount actually then possessed by the bank.

The prosecutor does not contend that the assessment did not truly appraise the moneys actually held on the day in question but claims that the bank had, for the purpose of reducing its taxable funds, just before that date purchased $400,000 of United States bonds (which of course were not subject to assessment), and shortly thereafter sold these bonds and reconverted them into money, and that this was with intent to defraud the city.

It is conceded that the actual moneys in hand and taxable were in the amount found by the state board, and assuming that a purpose as above indicated would taint the transaction so as to render that which was ordinarily non-taxable taxable, the burden was on the prosecutor to establish that this sum did not truly represent the sum available for taxation by reason of some fraudulent device or manipulation, whereby the moneys were for that purpose converted into non-taxable securities. The proofs were insufficient for this purpose. The records of the bank were produced showing the sundry sums on hand at various times and the bond transactions of the bank for a considerable period of time. The president of the bank was called and his testimony was to the effect that he had substantially entire charge of the bank's investments; that it was customary to change these investments from time to time and particularly in government bonds; that the bonds in question were purchased as part of the routine of the bank's investment system and that when sold, as they were later on, they were sold in accordance with this routine and that they yielded a small profit. His further testimony was that the purpose of the transaction was not to defeat the taxing power of the municipality, but for the purpose of keeping the bank's funds invested in the securities which were legal for the purpose.

We think the state board was justified in its finding of the moneys subject to taxation, and we find that the earlier conversion of the moneys into bonds and the subsequent sale of the bonds was not shown to be part of a plan or purpose to evade the taxation of any moneys that should have been in hand on October 1st, 1927.

As an abstract proposition of law we think, however, the exercise of a legal right by the conversion of taxable property into that which is non-taxable, even for the purpose of avoiding the tax, where the conversion is in good faith, and complete without reservation, would not subject either the non-taxable property thus purchased to taxation, or create a fiction whereby such property should be regarded as resolved into the purchase price with which it was bought for purposes of taxation, and so much counsel for the prosecutor seems to concede, but attacks the good faith of the transaction here involved, a contention with which we do not agree.

A number of cases are cited to us, such as the exchange of taxable moneys into greenbacks, which latter were not taxable, and immediately after the taxing date the re-exchanging of the same greenbacks back into ordinary forms of money. They all, however, involved a colorable transaction only, and not one that was genuine and without reservation. In the present case the bonds were purchased on September 28th, 1927, a few days before the taxing date (October 1st, 1927); $200,000 of them were sold on October 14th, following, and on October 25th, 1927, the remaining $200,000 were sold. The sale of the bonds as stated by the president of the bank was made for the purpose of paying for utility and railroad bonds and to meet withdrawals during that month.

Counsel for the prosecutor, conceding the right to purchase and hold government bonds even though the purpose be thereby to escape taxation, it would seem to follow that, so long as the transaction is *bona fide,* an equal right to again change such securities must exist; and where, as here, it appears that the transaction was in the first place an outright purchase of bonds whereby the moneys with which they were purchased were absorbed into that security, the moneys with which the bonds were purchased cannot be taxed as an asset, nor can the subsequent reconversion of the bonds into money recreate a fund which would be subject to taxation as of the first of October.

The order is affirmed, with costs.